**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| HEATHER RUDY, individually and on behalf of all others similarly situated, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) No. 21-CV-3575 ) Hon. Marvin E. Aspen |
| FAMILY DOLLAR STORES, INC. | ) ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

MARVIN E. ASPEN, District Judge:

This putative class action concerns the alleged deceptive labeling of snack almonds. Plaintiff Heather Rudy claims that Defendant Family Dollar Stores, Inc. ("Family Dollar") misled her and other consumers by marketing its Eatz brand Smoked Almonds (the "Product") as "smoked," though they were not roasted over an open fire. (Complaint ("Compl.") (Dkt. No. 1) ¶¶ 1, 21–23.)[1] Rudy brings claims for violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1 *et seq*.; breaches of express warranty, implied warranty of merchantability, and the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301 *et seq*.; negligent misrepresentation; fraud; and unjust enrichment. (*Id.* ¶¶ 95–115.) Rudy asserts that jurisdiction is proper under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d)(2). (*Id.* ¶ 63.)[2]

---

[1] For ECF filings, we cite to the page number(s) set forth in the document's ECF header unless citing to a particular paragraph or other page designation is more appropriate.

[2] The CAFA gives federal courts jurisdiction over class actions in which there is at least $5,000,000 in controversy, minimal diversity exists between the parties, and the total number of class members is greater than 100. *See* 28 U.S.C. § 1332(d). Rudy alleges that she is a citizen of

Family Dollar has moved to dismiss Rudy's claims under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. (Family Dollar Stores, Inc.'s Motion to Dismiss Plaintiff's Class Action Complaint ("Motion") (Dkt. No. 24).) For the reasons set forth below, we grant Family Dollar's Motion in part and deny it in part.

## BACKGROUND

The following facts are taken from the Complaint and are deemed to be true for the purposes of this motion. *See Bell v. City of Chicago*, 835 F.3d 736, 738 (7th Cir. 2016); *see also Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008).

Rudy purchased the Product "on one or more occasions within the statute of limitations for each cause of action alleged, from [Family Dollar's] stores, including the location at 1106 Washington St, Waukegan, IL 60085, between April and May 2021, among other times." (Compl. ¶ 76.) Rudy does not specify how much she paid for the Product but alleges that Family Dollar sells the Product for a "price premium compared to other similar products, no less than $1.00 for 7 oz (198g)." (*Id.* ¶ 62.)

---

Illinois and that Family Dollar is a Delaware Corporation with its principal place of business in Virginia, thus satisfying the minimum diversity requirement. (*See* Compl. ¶¶ 65, 66.) Rudy seeks to represent a class of consumers in Illinois, Texas, Utah, New Mexico, Indiana, West Virginia, and North Carolina who purchased the Product (*Id.* ¶ 87), so it is reasonable to infer that the class includes at least 100 members. *See Tropp v. Prairie Farms Dairy, Inc.*, 20-cv-1035-jdp, 2021 WL 5416639, at *1 (W.D. Wis. Nov. 19, 2021) (reasonable to infer that the proposed class includes at least 100 members because plaintiff sought to represent a class of consumers in Wisconsin, Illinois, Iowa, and Michigan). Rudy also alleges "[u]pon information and belief, [that] the aggregate amount in controversy exceeds $5 million, including statutory damages, exclusive of interests and costs" (*Id.* ¶ 64), and Family Dollar has not challenged that allegation. Therefore, we conclude for the purpose of Family Dollar's Motion that Rudy has properly alleged jurisdiction. *See Gubala v. CVS Pharmacy, Inc.*, No. 14 C 9039, 2016 WL 1019794, at *2 n.6 (N.D. Ill. Mar. 15, 2016).

Before Rudy purchased the Product, she observed that the front label read "Smoked Almonds," that the package had "red coloring," and that "there was no mention of added smoke flavor." (*Id.* ¶ 77.) An image of the Product's front label is found below:



(*Id.* ¶ 1.) Based on the Product's front label, Rudy anticipated that the Product had been smoked over an open fire. (*Id.* ¶ 78.) However, the Product was not smoked over an open fire; it was flavored using natural smoke flavor. (*Id.* ¶ 21.) If Rudy had known that the Product had not been smoked over an open fire, she would not have purchased the Product or would have paid a lower price for it. (*Id.* ¶¶ 83, 85.) She claims that she would purchase the Product again if she could do so "with the assurance that the Product's representations are consistent with its composition." (*Id.* ¶ 86.)

Rudy brings this putative class action on behalf of herself and "Illinois, Texas, Utah, New Mexico, Indiana, West Virginia, and North Carolina residents who purchased the Product during the statutes of limitations for each cause of action alleged." (*Id.* ¶ 87.)

**LEGAL STANDARD**

A Federal Rule of Civil Procedure 12(b)(6) motion to dismiss is meant to test the sufficiency of the complaint, not to decide the merits of the case. *McReynolds v. Merrill Lynch & Co.*, *Inc.*, 694 F.3d 873, 878 (7th Cir. 2012); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In evaluating a motion to dismiss, courts "construe the complaint in the light most favorable to the plaintiff, accepting as true all well-pleaded facts alleged, and drawing all possible inferences in her favor." *Tamayo*, 526 F.3d at 1081. Courts may grant motions to dismiss under Rule 12(b)(6) only if a complaint lacks sufficient facts "to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678, 129 S. Ct. at 1949. Although a facially plausible complaint need not give "detailed factual allegations," it must allege facts sufficient "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964–65. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949. These requirements ensure that the defendant receives "fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964 (internal quotation marks and citation omitted).

Claims sounding in fraud, such as a claim alleging deceptive conduct in violation of the ICFA, must also meet the heightened pleading standard of Federal Rule of Civil Procedure 9(b). *See* Fed. R. Civ. P. 9(b); *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 646 (7th Cir. 2019); *Greenberger v. GEICO Gen. Ins. Co.*, 631 F.3d 392, 399 (7th Cir. 2011). As a practical matter, this means that a plaintiff "must identify the 'who, what when, where, and how'

4

of the alleged fraud." *Benson*, 944 F.3d at 646 (quoting *Vanzant v. Hill's Pet Nutrition, Inc.*, 934

F.3d 730, 738 (7th Cir. 2019)).

## ANALYSIS

### I.   ICFA

The ICFA is designed "to protect consumers, borrowers, and business persons against

fraud, unfair methods of competition, and other unfair and deceptive business practices." *Siegel*

*v. Shell Oil Co.*, 612 F.3d 932, 934 (7th Cir. 2010) (internal citation and quotation marks

omitted).  "In order to state a claim under the ICFA, a plaintiff must show: '(1) a deceptive or

unfair act or promise by the defendant; (2) the defendant's intent that the plaintiff rely on the

deceptive or unfair practice; and (3) that the unfair or deceptive practice occurred during a course

of conduct involving trade or commerce.'"  *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d

732, 739 (7th Cir. 2014) (quoting *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 574 (7th Cir.

2012)).  "Although ICFA claims often involve disputed questions of fact not suitable to a motion

to dismiss, a court may dismiss the complaint if the challenged statement was not misleading as a

matter of law."  *Ibarrola v. Kind, LLC*, 83 F. Supp. 3d 751, 756 (N.D. Ill. 2015) (citing *Bober v.*

*Glaxo Wellcome PLC*, 246 F.3d 934, 940 (7th Cir. 2001); *Pelayo v. Nestle USA, Inc.*, 989 F.

Supp. 2d 973, 978 (C.D. Cal. 2013)).

Family Dollar argues that Rudy has failed to plead two elements of her ICFA cause of

action: (1) a deceptive or unfair practice and (2) damages.  (Defendant Family Dollar Stores,

Inc.'s Memorandum of Law in Support of Motion to Dismiss Plaintiff's Class Action Complaint

("Memo") (Dkt. No. 19) at 5–14.)  We consider each of these arguments in turn.

### A.   Deceptive Practice

Rudy's ICFA claim challenges a "deceptive," as opposed to an "unfair," practice.  (*See,*

*e.g.*, Compl. ¶ 97 (referring to Family Dollar's representations as "deceptive"); Plaintiff's

Memorandum in Opposition to Defendant's Motion to Dismiss the Complaint ("Opposition")
(Dkt. No. 26) at 8–12 (explaining why Rudy sufficiently pled a deceptive practice).)
Accordingly, we apply the standard for deceptive practices to Rudy's ICFA claim.

 "[A] practice is deceptive 'if it creates a likelihood of deception or has the capacity to
deceive.'" *Benson*, 944 F.3d at 646 (quoting *Bober*, 246 F.3d at 938). "To determine the
likelihood of deception, courts apply a 'reasonable consumer' standard." *Geske v. PNY Techs.,
Inc.*, 503 F. Supp. 3d 687, 704–05 (N.D. Ill. 2020) (citing *Benson*, 944 F.3d at 646). The
reasonable consumer standard "requires more than a mere possibility that [a] label might
conceivably be misunderstood by some few consumers viewing it in an unreasonable manner.
Rather, the reasonable consumer standard requires a probability that a significant portion of the
general consuming public . . . acting reasonably in the circumstances, could be misled." *Ebner v.
Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016) (internal citations and quotation marks omitted);
*Geske*, 503 F. Supp. 3d at 705 (quoting *Ebner*).

 Courts considering "deceptive advertising claims should take into account all the
information available to consumers and the context in which that information is provided and
used." *Bell v. Publix Super Markets, Inc.*, 982 F.3d 468, 476 (7th Cir. 2020). "What matters
most is how real consumers understand and react to the advertising." *Id*. "[W]here plaintiffs
base deceptive advertising claims on unreasonable or fanciful interpretations of labels or other
advertising, dismissal on the pleadings may well be justified." *Id*. at 477.

 Family Dollar argues that Rudy has not pled a deceptive or unfair trade practice because
no reasonable consumer would assume that the Product was roasted over an open fire, as
opposed to treated with liquid smoke. (Memo at 6–8.) According to Family Dollar, the Product
is priced too cheaply for a reasonable consumer to believe that it was roasted over an open fire.

6

(*Id*. at 7–8.)  Additionally, the ingredient list discloses that the Product is roasted in oil and contains natural smoke flavor.  (*Id*. at 9–10.)

The front of the Product bears the phrase "Smoked almonds," in red packaging that Rudy alleges is "evocative of fire."  (Compl. ¶ 1.)  Rudy claims that she interpreted the phrase "smoked" to mean that the Product was smoked over an open fire.  (*Id*. ¶¶ 77–80.)  This is not an unreasonable or fanciful interpretation.  Although the term "smoked" may be used to describe a flavor, as Family Dollar suggests, it can also be used to describe a process.  *See, e.g.*, "smoked," Oxford English Dictionary Online, https://www.oed.com/view/Entry/182704?rskey=28b2kI&result=2#eid ("Dried or cured by exposure to smoke; impregnated with smoke.") (last visited Feb. 2, 2022).  And nothing on the front of the Product's label would suggest to consumers that the term "smoked" refers to the Product's flavoring, as opposed to the process by which the Product was produced.  *See Colpitts v. Blue Diamond Growers*, 527 F. Supp. 3d 562, 581 (S.D.N.Y. 2021) (concluding that plaintiff had plausibly alleged a violation of New York consumer protection statutes where "nothing else on the front of the [snack almond] packaging would alert consumers that the 'Smokehouse®' label refers only to the almonds' flavor, rather than the flavoring process, such as words like 'smoky flavor.'").  For instance, unlike competitor products, the Product's front label does not contain the word "flavored."  (*Compare* Compl. ¶ 1, *with id*. ¶ 46.)

The price of the product is not so low as to render Rudy's interpretation unreasonable as a matter of law either.  Rudy alleged that Family Dollar sold the Product at a "premium" price of "no less than $1.00 for 7 oz (198 g)" of almonds.  (*Id.* ¶ 62.)  To our knowledge, there is nothing so costly about the process of roasting almonds over an open fire that a reasonable consumer

could not believe that the price Rudy paid is too low for the Product to be smoked over fire.[3] *See Colpitts*, 527 F. Supp. 3d at 583 ("Smoking almonds also does not seem to entail a process that would trigger such substantial costs that no reasonable consumer would believe that these almonds, priced at no less than $2.79 per 1.5 OZ . . . were smoked over a fire.") (internal citation and quotation marks omitted). That distinguishes this case from cases in which a consumer claimed to have been deceived when a low-priced product did not contain a rare or expensive ingredient. *See, e.g.*, *Moore v. Trader Joe's Co.*, 4 F.4th 874, 883–85 (9th Cir. 2021) (Manuka honey); *Brumfield v. Trader Joe's Co.*, 17 Civ. 3239 (LGS), 2018 WL 4168956, at *1–2 (S.D.N.Y. Aug. 30, 2018) (truffle oil).

As for Family Dollar's "ingredient list" argument, numerous courts have rejected the idea that back-label ingredient lists can immunize defendants from suit for ambiguous front labels. *See, e.g., Bell*, 982 F.3d at 476 ("We . . . join our colleagues in at least three other circuits in holding that an accurate fine-print list of ingredients does not foreclose as a matter of law a claim that an ambiguous front label deceives reasonable consumers."); *York v. Andalou Nats., Inc.*, No. 16-cv-00894-SMY-DGW, 2016 WL 7157555, at *3 (S. D. Ill. Dec. 8, 2016) (collecting cases); *see also Terrazzino v. Wal-Mart Stores, Inc.*, 335 F. Supp. 3d 1074, 1084 (N.D. Ill. 2018) (declining to dismiss plaintiff's complaint "simply because an ingredient list was included on the website selling the product"). "Many reasonable consumers do not . . . read every back label before placing groceries in their carts." *Bell*, 982 F.3d at 476. Rudy does not allege that she read the back label before purchasing the Product (*see* Compl. ¶¶ 76–86), and we cannot say, as a

---

[3] Family Dollar asks us to take judicial notice of the price of a smoked almond product and the contents of an Eater.com article referenced in Rudy's Complaint, which, according to Family Dollar, show that the Product was priced too cheaply to be smoked over an open fire. (Memo at 13.) Even assuming that this information is subject to judicial notice, it is too inconclusive for us to decide, as a matter of law, that Rudy's claim is implausible.

matter of law, that it was unreasonable for her not to do so. *Bell*, 982 F.3d at 477 (agreeing "that the reasonable consumer standard does not presume, at least as a matter of law, that reasonable consumers will test prominent front-label claims by examining the fine print on the back label"). Rudy has sufficiently pled a deceptive trade practice.

### B. Damages

Where, as here, the plaintiff is a private party, "an action brought under the ICFA requires the plaintiff to show [s]he suffered 'actual damage' as a result of the defendant's violation of the act." *Camasta*, 761 F.3d at 739 (citing 815 ILCS 505/10a). The element of actual damages in such cases "requires that the plaintiff suffer actual pecuniary loss." *Kim v. Carter's Inc.*, 598 F.3d 362, 365 (7th Cir. 2010) (internal quotation marks and citations omitted); *see also Benson*, 944 F.3d at 647. "[A]ctual loss may occur if the seller's deception deprives the plaintiff of 'the benefit of her bargain' by causing her to pay 'more than the actual value of the [product].'" *Kim*, 598 F.3d at 365 (quoting *Mulligan v. QVC, Inc.*, 382 Ill. App. 3d 620, 628, 888 N.E.2d 1190, 1197–98 (1st Dist. 2008)). Where a plaintiff fails to allege facts showing that she suffered actual damage, it is appropriate to dismiss her ICFA claim. *See Camasta*, 761 F.3d at 739.

Family Dollar argues that Rudy cannot show that she was damaged under the ICFA because she was not deprived of the benefit of her bargain. (Memo at 12–14.) According to Family Dollar, it is implausible that Rudy paid a premium rate for the Product based on the allegations in her Complaint. (*Id*. at 13.) Further, Family Dollar claims that Rudy should not be able to plead an injury where she has an alternate remedy—returning the almonds for a full refund. (*Id*. at 14.) In response, Rudy argues that she has sufficiently pled injury because she

has alleged that she and members of the putative class were overcharged for the Product. (Opposition at 13–14.)

Numerous courts have permitted ICFA claims to proceed where, as here, a plaintiff claimed that defendant misled her as to the nature of the product she was buying, and she either paid more for the product than she otherwise would have or would not have purchased the product had she known the truth. *See, e.g., Terrazzino*, 335 F. Supp. 3d at 1085 (plaintiff's "allegation that she paid more for the Pita Chips because they were labeled as 'All Natural,' and further that she would not have bought the Pita Chips if she had known that they were not, in fact, 'All Natural,' is sufficient to allege actual damages"); *McDonnell v. Nature's Way Prods., LLC*, No. 16 C 5011, 2017 WL 1149336, at *3 (N.D. Ill. Mar. 28, 2017) (concluding that it was sufficient for a plaintiff to plead that "she paid more for the products than they were actually worth" and "would not have purchased the vitamins at the price she paid if she had known that they contained foreign-sourced vitamins") (internal quotation marks and citations omitted); *Biffar v. Pinnacle Foods Grp., LLC*, No. 16-0873-DRH, 2016 WL 7429130, at *4 (S.D. Ill. Dec. 22, 2016) (plaintiff plausibly pled ICFA claim where she alleged "that the price of the muffin mix as represented was too much, or more than the value of the muffin mix as sold and that she would not have purchased it or would have paid less for it had she known it contained synthetic ingredients"); *Muir v. Playtex Prods., LLC*, 983 F. Supp. 2d 980, 990 (N.D. Ill. 2013) (plaintiff sufficiently pled ICFA claim where he alleged "that he was deprived of the benefit of the bargain because the Diaper Genie II Elite product was actually worth less than what it would have been worth had it actually been proven superior in odor control to its competitors"). We see no reason to deviate from that approach here. Rudy's theory is not so implausible as to merit dismissal at this stage.

10

Likewise, we reject the argument that Rudy cannot plead an injury under the ICFA because she could have obtained a refund. Rudy does not address this argument in her Opposition. (*See generally* Opposition.) Nonetheless, at least two other courts in this District have rejected similar arguments. In *Camasta v. Omaha Steaks International, Inc.*, No. 12-cv-08285, 2013 WL 4495661, at *6 (N.D. Ill. Aug. 21, 2013), the court concluded that it "would not further the purposes of ICFA" to dismiss a plaintiff's ICFA claim for lack of subject matter jurisdiction merely because he did not take advantage of a money back guarantee. *Id.*; *see also People ex rel. Hartigan v. Lann*, 225 Ill. App. 3d 236, 240, 587 N.E.2d 521, 524 (Ill. 1992) ("[T]he intent of the Consumer Fraud Act is to curb fraudulent abuses and to provide a remedy to persons thereby injured."); *FTC v. Pantron I Corp.*, 33 F.3d 1088, 1103 (9th Cir. 1994) ("Because even many unsatisfied customers will not take advantage of a money-back guarantee, a company which has engaged in consumer fraud would be able to retain a significant portion of the proceeds simply by making a largely illusory money-back offer."). The *Camasta* court also rejected the argument that the money-back program rendered the plaintiff's claims moot, observing that the plaintiff's prayer for relief included a request for statutory damages, punitive damages, attorney's fees and costs, and injunctive relief, all of which would not be satisfied by a refund. 2013 WL 4495661, at *7.

Similarly, in *Spivak v. Willis of Illinois, Inc.*, No. 12 C 1116, 2012 WL 1719841, at *2–3 (N.D. Ill. May 15, 2012), the court rejected the argument that a plaintiff's ICFA's claims were moot because defendants had offered to repay the amount that the plaintiff had actually paid for the product at issue. In doing so, the court noted that the defendants' repayment offer did not satisfy the plaintiff's demand, which included punitive damages, among other relief. *Id.*

We similarly conclude that Rudy may pursue her ICFA claim notwithstanding Family Dollar's refund policy. Dismissal would not further the purposes of ICFA, and Rudy is seeking several forms of relief, such as statutory damages (*see* Compl. at 15), which would not be satisfied with a refund.

* * *

For the foregoing reasons, we deny Family Dollar's motion to dismiss as to Rudy's ICFA claim.

## II.    Breach of Express and Implied Warranties

To state a claim for breach of express warranty under Illinois law, a plaintiff must allege that a seller: "(1) made an affirmation of fact or promise; (2) relating to the goods; (3) which was part of the basis for the bargain; and (4) guaranteed that the goods would conform to the affirmation or promise." *O'Connor v. Ford Motor Co.*, 477 F. Supp. 3d 705, 714 (N.D. Ill. 2020). Generally, "a plaintiff must state the terms of the warranty alleged to be breached or attach it to the complaint." *Gubala v. CVS Pharmacy, Inc.*, No. 14 C 9039, 2015 WL 3777627, at *7 (N.D. Ill. June 16, 2015) (internal quotation marks and citation omitted).

"To state a claim for breach of the implied warranty of merchantability, a plaintiff must allege that '(1) the defendant sold goods that were not merchantable at the time of sale; (2) the plaintiff suffered damages as a result of the defective goods; and (3) the plaintiff gave the defendant notice of the defect.'" *Baldwin v. Star Scientific, Inc.*, 78 F. Supp. 3d 724, 741 (N.D. Ill. 2015) (quoting *Indus. Hard Chrome, Ltd. v. Hetran, Inc.*, 64 F. Supp. 2d 741, 748 (N.D. Ill. 1999)).

Buyers seeking to sue for breach of express or implied warranties must first notify the seller of its breach. *Ibarrola*, 83 F. Supp. 3d at 760 (express warranty); *Baldwin*, 78 F. Supp. 3d

12

at 741–42 (implied warranty). A party's failure to comply with the notice requirement may be excused if they allege that they suffered a physical injury or that the defendant had actual knowledge of the product's defect. *Ibarrola*, 83 F. Supp. 3d at 760. But this failure will not be excused if a plaintiff has suffered economic damages only. *See Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482, 494–95, 675 N.E.2d 584, 590–91 (Ill. 1996).

      In Family Dollar's view, Rudy's claims for breach of express and implied warranties fail because she has not adequately pled the pre-suit notice required for such claims. (Memo at 14–15.) Family Dollar also argues that Rudy's claim for breach of implied warranty cannot survive because Rudy has not alleged that the Product was not fit for human consumption. (*Id.* at 15.) Rudy responds that she met the pre-suit notice requirement because she notified Family Dollar of the breach through filing this suit. (Opposition at 14.) As for Family Dollar's second argument, Rudy contends that the Product was "'not merchantable because [it was] not fit to pass in the trade as advertised'" since Family Dollar "identified [the Product] as 'Smoked Almonds,' which gives 'the false impression that all the smoke taste was due to being smoked,' when none of its taste was a result of smoking." (*Id.* at 14–15 (quoting Compl. ¶ 45).)

      We need not reach Family Dollar's "human consumption" argument because we agree with its pre-suit notice argument. The notice requirement is intended to "encourage pre-suit settlement negotiations." *In re McDonald's French Fries Litig.*, 503 F. Supp. 2d 953, 956 (N.D. Ill. 2007). That purpose would be eviscerated if a party could satisfy the notice requirement by filing suit, as Rudy contends. The case cited by Rudy, *In re Bridgestone/Firestone, Inc. Tires Products*, 155 F. Supp. 2d 1069 (S.D. Ind. 2001), does not persuade us to reach a different result. In that case, the Southern District of Indiana applied the laws of Tennessee and Michigan, not Illinois law, to plaintiffs' breach of warranty claims. *Id.* at 1084. In finding that the filing of suit

could satisfy the notice requirement, the court observed that it was reaching a different result than the Illinois Supreme Court, which had held that the notice requirement could not be met by filing suit, except in circumstances not present here. *See id*. at 1110 (observing that the Illinois Supreme Court held in *Connick*, 174 Ill. 2d at 494–95, 675 N.E.2d at 590, that "under Illinois law only a consumer buyer who suffered a personal injury may satisfy [the notice requirements set forth in the Uniform Commercial Code] by filing suit").

Nor does Rudy assert that she qualifies for an exception to the pre-suit notice requirement. (*See* Opposition at 14.)[4] Because Rudy did not notify Family Dollar of the alleged breach before filing this lawsuit and has not offered a cognizable excuse for that failure, her claims for beach of express and implied warranties are dismissed.

## III.    Magnuson-Moss Warranty Act

The Magnuson-Moss Warranty Act defines a "written warranty" as:

> (A) any written affirmation of fact or written promise made in connection with the sale of a consumer product by a supplier to a buyer which relates to the nature of the material or workmanship and affirms or promises that such material or workmanship is defect free or will meet a specified level of performance over a specified period of time, or

---

[4] Rudy does not argue in her Opposition that "Defendant received notice and should have been aware of these issues due to complaints by regulators, competitors, and consumers, to its main offices," as she alleges in her Complaint. (*See* Opposition at 14; Compl. ¶ 105.)  Had she done so, we still would have dismissed her breach of express and implied warranty claims because the Illinois Supreme Court has made clear that a defendant's "generalized knowledge" about a product defect is insufficient to fulfill a plaintiff's pre-suit notice requirement. *See Connick*, 174 Ill. 2d at 493–94, 675 N.E.2d at 590.  "[E]ven if a manufacturer is aware of problems with a particular product line, the notice requirement. . . is satisfied only where the manufacturer is somehow apprised of the trouble with the particular product purchased by a particular buyer." *Id*. at 494; *see also O'Connor*, 477 F. Supp. 3d at 715 (rejecting the argument that plaintiff need not provide pre-suit notice because other consumers had complained about a defect and defendant had issued technical service bulletins acknowledging that defect).  The allegations in paragraph 105 of Rudy's Complaint do not excuse Rudy from providing pre-suit notice because, at most, they suggest only that Family Dollar had "generalized knowledge" of a product defect.

(B) any undertaking in writing in connection with the sale by a supplier of a consumer product to refund, repair, replace, or take other remedial action with respect to such product in the event that such product fails to meet the specifications set forth in the undertaking,

which written affirmation, promise, or undertaking becomes part of the basis of the bargain between a supplier and a buyer for purposes other than resale of such product.

15 U.S.C. § 2301(6).

Family Dollar argues that its product description does not constitute a warranty under the Magnuson-Moss Act and, therefore, Rudy is not entitled to relief under that Act. (Memo at 15.) Rudy disputes this conclusion, arguing that the statement "Smoked Almonds" is an "affirmation of fact" that the Product will "have an appreciable amount of its smoked taste from having undergone a smoking process." (Opposition at 15 (internal quotation marks and citations omitted).) Rudy contends that the liquid smoke flavor does not impart the same taste as smoke from an open fire; accordingly, the Product is not "defect free" because it lacks "the delicate balance of phenolic compounds." (*Id*. (internal quotation marks and citations omitted).) In other words, Rudy claims that the representations on the Product's packaging satisfy 15 U.S.C. § 2301(6)(A).

We agree with Family Dollar. The phrase "Smoked Almonds" is a product description that does not warrant to consumers that the Product is defect-free or will perform at a specified level over a specific time. *See In re Sears, Roebuck & Co.*, No. MDL-1703, 05 C 4742, 05 C 2623, 2006 WL 1443737, at *4 (N.D. Ill. May 17, 2006) (concluding that the phrase "Made in USA" was not a "written warranty" under the Magnuson-Moss Act because it does not indicate that the product will be defect-free or will perform at a specified level over a specific time); *Jones v. ConAgra Foods, Inc.*, 912 F. Supp. 2d 889, 904 (N.D. Cal. 2012) (labels bearing phrases like "100% natural," "organic," and "certified organic" are not written warranties within the

meaning of the Magnuson-Moss act because they do not affirm that the products are defect free).

Accordingly, this phrase does not constitute a "written warranty" under the Magnuson-Moss

Warranty Act.  Rudy's claim under this Act is dismissed.

## IV.    Negligent Misrepresentation

Family Dollar argues that Rudy's claim for negligent misrepresentation is barred by the

economic loss doctrine.  (Memo at 15.)  The economic loss doctrine—also known as the

"*Moorman* doctrine"—was first set out by the Illinois Supreme Court in *Moorman*

*Manufacturing Co. v. National Tank Co.*, 91 Ill. 2d 69, 88, 435 N.E.2d 443, 451–52 (Ill. 1982).

It "'denies a remedy in tort to a party whose complaint is rooted in disappointed contractual or

commercial expectations.'"  *Manley v. Hain Celestial Grp., Inc.*, 417 F. Supp. 3d 1114, 1120

(N.D. Ill. 2019) (quoting *Sienna Ct. Condo. Assoc. v. Champion Aluminum Corp.*, 2018 IL

122022, ¶ 21, 129 N.E.3d 1112, 1119 (2018)).

Rudy does not dispute that she suffered an economic loss; instead, she argues that her

claim for negligent misrepresentation satisfies an exception to the economic loss doctrine.

(Opposition at 15–16.)  Specifically, a plaintiff who suffers purely economic losses may

maintain a claim for negligent misrepresentation against "one who is in the business of supplying

information for the guidance of others in their business transactions."  *See Moorman*, 91 Ill. 2d at

89, 435 N.E.2d at 452.  According to Rudy, Family Dollar assumed a special "duty to truthfully

represent the Product . . . 'based on [its] position, holding itself out as having special knowledge

and experience in this area, as custodians of the Eatz brand.'"  (Opposition at 16 (quoting Compl.

¶ 109).)  Rudy claims that this duty is akin to situations in which "a party's knowledge and

expertise cannot be memorialized in contract terms, but is expected independent of the [counter-

party's] contractual obligations."  (*Id.* (internal citation and quotation marks omitted).)

16

Family Dollar has the better argument. The authority that Rudy cites in support of her position, *Congregation of the Passion, Holy Cross Province v. Touche Ross & Co.*, 159 Ill. 2d 137, 162, 636 N.E.2d 503, 514 (Ill. 1994), concerns services offered by skilled professional accountants. That authority does not control here. Family Dollar "manufactures, labels, markets and sells" goods (Compl. ¶ 1)—it is not a learned intermediary offering professional advice to its customers.

In *Manley*, another court in this District rejected a theory similar to Rudy's in a suit brought by a disgruntled consumer against a sunscreen manufacturer. 417 F. Supp. 3d at 1120. The court observed that a supplier of tangible goods did not become "one who is in the business of supplying information for the guidance of others in their business transactions" by virtue of providing "information ancillary to the sale of a product" only. *Id.* (internal quotation marks and citations omitted). We find this to be the more persuasive authority.

Family Dollar may have provided information to customers that was ancillary to the sale of its products, but Rudy has not pled that Family Dollar was in the business of providing information in the manner intended by the exception to the economic loss doctrine. *See id.*; *see also First Midwest Bank, N.A. v. Stewart Title Guar. Co.*, 218 Ill. 2d 326, 339, 843 N.E.2d 327, 334–35 (Ill. 2006) (exception to economic loss doctrine does not apply where "the negligent misrepresentation is contained within information which is incidental to a tangible product"). Accordingly, Rudy's claim for negligent misrepresentation is dismissed.

## V.     Fraud

To state a claim for common-law fraud, a plaintiff must plead: "'(1) a false statement of material fact; (2) defendant's knowledge that the statement was false; (3) defendant's intent that the statement induce the plaintiff to act; (4) plaintiff's reliance upon the truth of the statement;

and (5) plaintiff's damages resulting from reliance on the statement.'" *Tricontinental Indus., Ltd. v. PricewaterhouseCoopers, LLP*, 475 F.3d 824, 841 (7th Cir. 2007) (quoting *Connick*, 174 Ill. 2d. at 496, 675 N.E.2d at 591). "*Scienter*, knowledge by the defendant that a statement he has made is false, is an essential element of common-law fraud." *Ollivier v. Alden*, 262 Ill. App. 3d 190, 198, 634 N.E.2d 418, 424 (2d Dist. 1994); *see also Tricontinental Indus.*, 475 F.3d at 841–42 (plaintiff's claim for common-law fraud was properly dismissed where plaintiff did not adequately plead scienter).

Family Dollar contends that Rudy's allegations in support of scienter are insufficient because they are conclusory and non-factual. (Memo at 15–16.) Rudy does not address this argument directly, arguing only that she has satisfied the pleading requirements for fraud set forth in Federal Rule of Civil Procedure 9(b) because she alleged the "who, what, where, when, and how" of the fraud. (Opposition at 16–17 (internal citations and quotation marks omitted).) However, in Rudy's Complaint, she alleges that Family Dollar's fraudulent intent "is evinced by its knowledge that the Product was not consistent with its representations." (Compl. ¶ 114.)

Rudy's allegations in support of scienter parallel those found to be insufficient in *Colpitts*. In that case, the plaintiff brought a claim for common-law fraud under New York law based on the product labeling on snack almonds. *See Colpitts*, 527 F. Supp. 3d at 571–72, 585. The plaintiff alleged that "Defendant's fraudulent intent is evinced by its failure to accurately identify the Product on the front label, when it knew its statements were not true nor accurate." *Id*. at 585 (internal quotation marks and citation omitted). The court determined that such allegations were "conclusory," and therefore, failed to satisfy the Rule 9(b) standard. *Id*.

Although the fraud claim in *Colpitts* arose under New York law, the *Colpitts* court's conclusions are still persuasive because New York common-law fraud, like Illinois common-law

fraud, requires the defendant to know that the material misstatement was false. *See Quiroz v. Beaverton Foods, Inc.*, 17-CV-7348 (NGG) (JO), 2019 WL 1473088, at *10 (E.D.N.Y. Mar. 31, 2019). Additionally, the *Colpitts* court's conclusions are consistent with those reached by other courts considering deceptive labeling claims. *See, e.g., Twohig v. Shop-Rite Supermarkets, Inc.*, 519 F. Supp. 3d 154, 166 (S.D.N.Y. 2021) (plaintiffs failed to plead fraudulent intent where they alleged that "Defendant's fraudulent intent is evinced by its failure to accurately identify the Product on the front label and ingredient list, when it knew its statements were neither true nor accurate and misled consumers") (internal quotation marks and citation omitted); *Barreto v. Westbrae Nat., Inc.*, 518 F. Supp. 3d 795, 808 (S.D.N.Y. 2021) (dismissing a fraud claim where plaintiff alleged that "Defendant's fraudulent intent is evinced by its failure to accurately identify the Products on the front label when it knew this was not true") (internal quotation marks and citation omitted). Because Rudy's allegations in support of fraudulent intent are conclusory, they do not meet Rule 9(b)'s pleading standard. For this reason, we dismiss Rudy's common-law fraud claim.

## VI.  Unjust Enrichment

"Unjust enrichment is a 'quasi-contract' theory that permits courts to imply the existence of a contract where none exists in order to prevent unjust results." *Prudential Ins. Co. of Am. v. Clark Consulting, Inc.*, 548 F. Supp. 2d 619, 622 (N.D. Ill. 2008). To state a claim for unjust enrichment under Illinois law, a "plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates fundamental principles of justice, equity, and good conscience." *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 516 (7th Cir. 2011) (internal quotation marks and citation omitted); *see also Prudential Ins.*, 548 F. Supp. 2d at 622. However, if the parties' relationship is governed by a

19

contract, a plaintiff cannot bring a claim of unjust enrichment unless the claim falls outside of that contract. *Prudential Ins.*, 548 F. Supp. 2d at 622.

Rudy alleges that Family Dollar was unjustly enriched when it "obtained benefits and monies because the Product was not [] represented [as] expected, to the detriment and impoverishment of plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits." (Compl. ¶ 115.) Family Dollar insists that Rudy's unjust enrichment claim should be dismissed because it is duplicative of other claims and because Rudy has an adequate remedy at law. (Memo at 16.) In response, Rudy claims that it would be premature to dismiss her unjust enrichment claim because Federal Rule of Civil Procedure 8(d)(2) allows parties to plead alternative claims. (Opposition at 17.) If we conclude that Rudy cannot prove her ICFA or common law claims, Rudy continues, then she might be able to prevail on her claim for unjust enrichment. (*Id.*)

Rudy is correct that she may plead her unjust enrichment claim in the alternative. "Under federal pleading standards, a plaintiff may plead claims in the alternative, even if the claims are contradictory." *Prudential Ins.*, 548 F. Supp. 2d at 623; *see also City of Rockford v. Mallinckrodt ARD, Inc.*, 360 F. Supp. 3d 730, 771 (N.D. Ill. 2019). Accordingly, we decline to dismiss her unjust enrichment claim at this time.

## VII.    Injunctive Relief

"[A] person exposed to a risk of future harm may pursue forward-looking, injunctive relief to prevent the harm from occurring, at least so long as the risk of harm is sufficiently imminent and substantial." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2210 (2021) (internal citations omitted); *see also Scherr v. Marriott Int'l, Inc.*, 703 F.3d 1069, 1074 (7th Cir. 2013) ("[T]o establish injury in fact when seeking prospective injunctive relief, a plaintiff must allege a

'real and immediate' threat of future violations of their rights. . . .") (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 102, 103 S. Ct. 1660, 1665 (1983)).

Family Dollar asserts that Rudy does not have Article III standing to pursue injunctive relief because she does not face a real or immediate threat of future harm. (Memo at 16.) Rudy responds that she has standing to seek injunctive relief because she has alleged that she intends to purchase the Product again as soon as she can be sure that the "Product's representations are consistent with its composition." (Opposition at 17–18 (internal quotation marks and citations omitted).) She further contends that her allegations of continuing harm are not based on conjecture because Family Dollar's unlawful practices continue. (*Id*. at 18.)

Rudy's request for injunctive relief is based solely on the speculation that because Family Dollar harmed her in the past, Family Dollar is likely to harm her in the future. However, "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 564, 112 S. Ct. 2130, 2138 (1992) (internal quotation marks and citations omitted). Rudy now knows that the Product is flavored with liquid smoke; therefore, she is unlikely to be harmed by that practice in the future. *See Camasta*, 761 F.3d at 740–41 (observing that because plaintiff was aware of defendant's sales practices, he was unlikely to be harmed by those practices in the future); *Terrazzino*, 335 F. Supp. 3d at 1087 (dismissing plaintiff's claim for injunctive relief where plaintiff was aware that the pita chips at issue were not "All Natural," and therefore, was unlikely to be harmed by the alleged deception in the future); *Ulrich v. Probalance, Inc.*, No. 18 C 10488, 2017 WL 3581183, at *7 (N.D. Ill. Aug. 18, 2017) (observing that "[m]ost courts . . . agree . . . that consumer plaintiffs cannot pursue injunctive relief if they are already aware of the alleged deceptive practice" and

concluding that plaintiff lacked standing to pursue injunctive relief). Accordingly, Rudy is not entitled to pursue injunctive relief.

## CONCLUSION

For the reasons set forth above, we grant Family Dollar's Motion to Dismiss as to Rudy's claims for breach of expressed and implied warranties and the Magnuson-Moss Warranty Act, negligent misrepresentation, and fraud. We also find that Rudy is not entitled to pursue injunctive relief. We deny Family Dollar's motion as to Rudy's IFCA and unjust enrichment claims. Rudy has until February 25, 2022, to amend her Complaint if she can do so in accordance with this Opinion and Federal Rule of Civil Procedure 11. It is so ordered.

_____
Honorable Marvin E. Aspen
United States District Judge

Dated: February 4, 2022

22